### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

OLADAPO OLATUNJI OLOFIN, *et al.*,

       *Plaintiffs*,

   v.

U.S. CITIZENSHIP AND IMMIGRATION
SERVICES, *et al.*,

       *Defendants.*

</td><td>

No. 22-cv-01684 (DLF)

</td></tr>
</table>

### <u>MEMORANDUM OPINION</u>

Plaintiffs Oladapo Olatunji Olofin, his spouse Omobusola Christy Olofin, and their minor children, A.O. and A.O. (collectively, the Olofins), filed this action seeking to compel U.S. Citizenship and Immigration Services (USCIS) to process their Form I-526 application for immigrant visas through the EB-5 Immigrant Investor Program. Compl. ¶ 5, Dkt. 1. Before the Court is USCIS's motion to dismiss, Dkt. 6. For the reasons that follow, the Court will dismiss the suit under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.       BACKGROUND

The EB-5 program aims to promote foreign investment in the United States. *See* 8 U.S.C. § 1153(b)(5)(A). A foreign investor may become eligible for an EB-5 immigrant visa if he invests $500,000 or more in a commercial enterprise located in an approved regional center within a "Targeted Employment Area," creates at least ten jobs, and actually places his own capital "at risk" to generate a return. Compl. ¶¶ 23–24 (citing 8 U.S.C. § 1153(b)(5)(A)-(C); 8 C.F.R. § 204.6(e), (f)(1)–(3), (g)(1)). To obtain an EB-5 visa, a foreign investor must first file a Form I-526 application with USCIS, which allows her "to obtain status as a legal U.S. resident, along with

her spouse and children, on a conditional basis for two years." *Tingzi Wang v. USCIS*, 375 F. Supp. 3d 22, 26 (D.D.C. 2019).  If USCIS approves the investor's Form I-526 application, the investor may then apply for an EB-5 visa and permanent lawful status via a Form I-829 petition. *See id.* at 26–27.  In adjudicating Form I-526 applications, USCIS adheres to a "visa availability" approach, Compl. ¶ 26, which means it prioritizes adjudicating applications from petitioners from countries that have yet to meet their visa availability cap.  *See Da Costa v. Immigr. Inv. Program Off.*, No. 22-cv-1576, 2022 WL 17173186, at *3 (D.D.C. Nov. 16, 2022).

The Olofins are nationals of Nigeria and residents of Oregon.  Compl. ¶ 16.  They invested $500,000 in a Sarasota, Florida-based limited partnership, which then invested that money in a mixed-use tower located in an approved regional center under the EB-5 program.  *Id.* ¶¶ 28–29. The Olofins filed a Form I-526 application in October 2019.  *Id.* ¶¶ 1–2.  USCIS acknowledged receipt of their Form I-526 application on October 17, 2019, but has yet to adjudicate it.  *Id.* ¶¶ 30, 38.  The Olofins filed this action on June 13, 2022, seeking injunctive relief under the Administrative Procedure Act or a writ of mandamus compelling USCIS to process their Form I-526 application.  *See id.* ¶ 5.  USCIS moved to dismiss for failure to state a claim under Rule 12(b)(6).[1]  *See* Defs.' Mot. at 1–2.

## II.  LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to

---

[1] USCIS also moved to dismiss under Rule 12(b)(4) for insufficient service of process.  *See* Defs.' Mot. at 8–9.  The Olofins proceeded to file proof of service on September 12, 2022 *see* Cert. of Serv., Dkt. 8, which satisfied the Court's Minute Order of August 13, 2022.  USCIS no longer presses this argument.  *See generally* Defs.' Reply, Dkt. 11; Joint Status Report, Dkt. 12.

"state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.   ANALYSIS

Courts review claims of unreasonable delay in processing immigration applications according to "the same [standard] under both § 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017). "The central question in evaluating a claim of unreasonable delay is whether the agency's delay is so egregious as to

warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quotation marks omitted).

"This Circuit applies the six-factor test established by *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ('*TRAC*') to determine whether agency action has been unreasonably delayed." *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175 (D.D.C. 2020). Under that test, the Court must balance the following:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quotation marks omitted). These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80)).

## A.    Factors 1 and 2: The rule of reason and lack of congressional timetable

The first two factors are often considered together, *see, e.g.*, *Tate v. Pompeo*, 513 F. Supp. 3d 132, 148 (D.D.C. 2021), *appeal dismissed*, No. 21-5068, 2021 WL 3713559 (D.C. Cir. July 22, 2021), and the first *TRAC* factor is often considered "the most important" of the six. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). In analyzing these factors, the Court must

determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).  Factors one and two favor USCIS in this case.[2]

As to the first factor, USCIS's  provides a rule of reason.  Under the visa availability approach, USCIS processes petitions in order of the first filed, with a wholly rational caveat: it prioritizes petitions from immigrants whose countries have yet to meet their visa availability cap. *Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach* (Apr. 2021), *available at* https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach (last visited Jan. 19, 2023);[3] *see also* Compl. ¶ 26.  "In other words, an immigrant who filed earlier than another but hails from a country that has already met its per-country cap for visas for that year may find herself behind the other applicant."  *DaCosta*, 2022 WL 17173186, at *3.  Courts in this district have consistently concluded that USCIS's visa availability method for processing Form I-526 applications satisfies the rule of reason under *TRAC* factor one.  *See id.* at *8 (collecting cases).

---

[2] Contrary to the Olofins' assertion, *see* Pls.' Opp'n at 7–8, Dkt. 7, it is not premature for the Court to consider the motion to dismiss.  Courts in this district have routinely concluded that it is not premature to decide whether an agency's delay is unreasonable when processing claims for immigration benefits at the motion to dismiss stage.  *See Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (collecting cases), *appeal dismissed*, No. 21-5048, 2021 WL 1440155 (D.C. Cir. Apr. 15, 2021).  So long as a "record contains enough facts to evaluate the *TRAC* factors" at the motion to dismiss stage, "then a Court may appropriately decide to do just that."  *Da Costa*, 2022 WL 17173186, at *8 (quoting *Sarlak v. Pompeo*, No. 20-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020)).  This record satisfies that standard.

[3]  The Court may take "judicial notice . . . of the facts regarding the operation of the EB-5 visa program made publicly available on the USCIS website."  *Bega v. Jaddou*, No. 22-cv-02171, 2022 WL 17403123, at *5 (D.D.C. Dec. 2, 2022) (citing, *inter alia*, *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013)).

The Olofins' arguments to the contrary fail to persuade the Court otherwise.  First, the fact that USCIS implemented the visa availability approach after the Olofins filed their application, *see* Compl. ¶ 67, is of no moment, because USCIS applied "[t]he new visa availability approach . . . to petitions pending as of the effective date of the change," including the Olofins'.  *USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory* (Jan. 29, 2020), *available at* https://www.uscis.gov/news/news-releases/uscis-adjusts-process-for-managing-eb-5-visa-petition-inventory (last visited Jan. 20, 2023).  Second, even if the Olofins' country of origin is not oversubscribed (i.e., has visas available), *see* Compl. ¶ 67, the delay that they and similarly situated parties face is nonetheless explainable: other applicants may already be ahead of them in line.  *See Palakuru*, 521 F. Supp. 3d at 51; *Thakker v. Renaud*, No. 20-cv-1133, 2021 WL 1092269, at *6 (D.D.C. Mar. 22, 2021), *appeal dismissed*, No. 21-5079, 2021 WL 3083431 (D.C. Cir. July 14, 2021).  And the Olofins have "fail[ed] to plausibly allege any facts showing that [USCIS] strayed from their rule of reason in this case."  *Da Costa*, 2022 WL 17173186, at *9.  Finally, the Olofins' allegations that USCIS cannot reasonably rely upon COVID-related burdens to rationalize the delay, Compl. ¶ 68, and is failing to live up to its own estimated processing times, *id.* ¶ 67, do not undermine the Court's conclusion that USCIS is processing according to a rule of reason.

As to the second factor, Congress has not mandated a binding timeline for USCIS's processing of Form I-526 applications.  Although "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application," Compl. ¶ 31 (quoting 8 USC § 1571(b)), "a sense of Congress resolution is not law," *Emergency Coal. to Defend Educ. Travel v. Dep't of Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008).  And in the context of assessing the reasonableness of USCIS's processing delays of Form I-526 applications, courts in this district have repeatedly treated this particular sense of

Congress as not binding.  *See, e.g.*, *DaCosta*, 2022 WL 17173186, at *9 (deeming it "merely hortatory"); *Palakuru*, 521 F. Supp. 3d at 51 (interpreting it as "precatory rather than binding"). Thus, there is no congressional timeline that necessarily governs Form I-562 adjudications.  In sum, the first two *TRAC* factors favor USCIS, as Form I-562 adjudications are governed by a rule of reason that is not supplanted by a binding congressional timeline.

Finally, the length of delay here is not unreasonable as a matter of law.  The Olofins submitted their Form I-526 application thirty-eight months ago.  *See* Compl. ¶ 38.  However, for nine of those months (from June 2021 to March 2022), USCIS's congressional authority to process Form I-562 applications lapsed.  *See DaCosta*, 2022 WL 17173186, at *2 (quoting Pub. L. No. 102-395, § 610, 106 Stat. 1828, 1874 (1992) (codified at 8 U.S.C. § 1153 note)); Compl. ¶ 22. Accordingly, USCIS's delay in processing the Olofins' application is effectively about thirty months.  *See id.* (omitting this same nine-month lapse from calculation of relevant delay period). A thirty-month delay is not out of line with periods that courts have consistently found not unreasonable for processing a Form I-526 application.  *See, e.g.*, *DaCosta*, 2022 WL 17173186, at *10 (twenty-seven months); *Palakuru*, 521 F. Supp. 3d at 52 (twenty-five months); *Bega*, 2022 WL 17403123, at *7 (between thirty-two and forty month delay); *Telles v. Mayorkas*, No. 21-cv-395, 2022 WL 2713349, at *4 (D.D.C. July 13, 2022) (forty-two months); *Mokkapati v. Mayorkas*, No. 21-cv-1195, 2022 WL 2817840, at *6 (D.D.C. July 19, 2022) (thirty-two months).[4]  Although comparable delays in other adjudications do not alone render this delay reasonable, *see* Pls.' Opp'n. at 9, these precedents "reinforce" the Court's determination that the Olofins have not stated a claim of unreasonable delay.  *Palakuru*, 521 F. Supp. 3d at 52 n.7.

---

[4] None of these case are distinguishable because they involve national security considerations or some action by USCIS on the plaintiff's petition (short of full adjudication), as the plaintiffs suggest, *see* Pls.' Opp'n at 5–6.

**B.      Factor 4: The agency's competing priorities**

Many courts find the fourth *TRAC* factor to "carr[y] the greatest weight." *DaCosta*, 2022 WL 17173186, at *10 (citing *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)).  In fact, "[t]his Circuit has refused to grant relief, even [when] all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Milligan*, 502 F. Supp. 3d at 319 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)) (alterations and quotations omitted).  The fourth factor considers the effect of prioritizing one agency action over others.  *See TRAC*, 750 F.2d at 80.  Courts are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to "the head of the queue" and "simply move[] all others back one space." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991).

The fourth factor weighs strongly in favor of USCIS in this case.  If the Court were to grant the Olofins' requested relief, that would require a reordering of agency priorities to place the Olofins at the front of the queue.  *See Palakuru*, 521 F. Supp. 3d at 52; *DaCosta*, 2022 WL 17173186, at *10; *Thakker*, 2021 WL 1092269, at *7.  USCIS is currently operating under the burden of a processing backlog, *see DaCosta*, 2022 WL 17173186, at *10 (citing USCIS, *USCIS Announces New Actions to Reduce Backlogs, Expand Premium Processing, and Provide Relief to Work Permit Holders* (Mar. 29, 2022), https://perma.cc/NBW4-6ZAQ)), and granting the Olofins' requested relief would unfairly prejudice similarly situated applicants caught up in that backlog.  The Olofins counter that USCIS has not demonstrated that "other petitions are equally deserving, considering especially the nature of the interests at stake in [their] case," Pls.' Opp'n at 9, but the

Court will assess the "nature and extent of [the Olofins'] interests" under *TRAC* factors three and five, not four. *In re United Mine Workers*, 190 F.3d at 549.

### C.        Factors 3 and 5: Prejudice of health, welfare, and other interests

*TRAC* factors three and five concern the "health and welfare . . . at stake" and "the interests prejudiced by delay." *TRAC*, 750 F.2d at 80.  These factors, often considered in tandem, *see, e.g.*, *Didban*, 435 F. Supp. 3d at 177, slightly favor the Olofins.

The Olofins allege that USCIS's delay in processing their Form I-526 application has caused them "to suffer and experience mental health issues, separated their family, impacted their ability to travel, and limited [their] quality of life, business prospects, and educational and life plans." Compl. ¶ 69.  They claim that "they are now suffering from hypertension, insomnia and anxiety, and had to severally seek a mental health practitioner for treatment." *Id.* ¶ 42.[5]  Taking these alleged adverse health consequences as true, as the Court must at this stage, *see Iqbal*, 556 U.S. at 679, the Olofins are in a worse position than other petitioners who merely claim that their lives have been put "on hold" by USCIS's delay.  *See Palakuru*, 521 F. Supp. 3d at 53.  Indeed, other courts have found physical health consequences to place factors three and five in the petitioner's favor.  *See, e.g.*, *DaCosta*, 2022 WL 17173186, at *10.  But while the Court is sympathetic to the Olofins' situation, it does not rise to a similar level of gravity as that in *DaCosta*, where the petitioners were forced to wait in dangerous and unsanitary conditions in their home countries while USCIS adjudicated their application.  *See id.*; *In re United Mine Workers*, 190 F.3d at 552 (requiring allegations of "grave danger to human life" under *TRAC* factor three).  At any

---

[5] The Court is less persuaded by the Olofins' claim that USCIS's delay in processing their application has "hinder[ed] their ability" to invest, travel, and enjoy "peace of mind," Compl. ¶ 42, because financial risks are "inherent in the [I-526] application process," *DaCosta*, 2022 WL 17173186, at *10 (quotation marks omitted).

rate, even if the Court were to conclude that *TRAC* factors three and five do in fact weigh in favor of the Olofins, "[t]hey are not enough to overcome the other factors that weigh strongly in the Government's favor." *Palakuru*, 521 F. Supp. 3d at 53.

### D.    Factor 6: Impropriety

The Olofins do not allege any impropriety on the part of USCIS.  Compl. ¶ 66; Pls.' Opp'n. at 10.  Courts in this district have diverged over whether the lack of any alleged impropriety weighs in favor of the defendant or is irrelevant to the *TRAC* analysis.  *See Whitlock v. DHS*, No. 21-cv-807, 2022 WL 424983, at *8 (D.D.C. Feb. 11, 2022) (collecting cases).  But even if the lack of impropriety is irrelevant, given the Court's analysis of *TRAC* factors one and four in particular, that does not change the result in this case.

***

Taken together, the *TRAC* factors heavily favor USCIS.  USCIS has not unreasonably delayed in adjudicating the Olofins' Form I-526 application.  Accordingly, the Olofins' APA claim fails, and their Mandamus Act claim falls with it.  *See Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 96 (rejecting a plaintiff's mandamus claim for the same reasons the Court rejected the plaintiff's APA claim).  The Court therefore denies the Olofins' request for attorneys' fees and costs under the Equal Access to Justice Act.  *See* Compl. ¶ 75; 28 U.S.C. § 2412 (only a "prevailing party" may receive fees and expenses).

**CONCLUSION**

For the foregoing reasons, the Court will grant USCIS's motion to dismiss.  A separate order

consistent with this decision accompanies this memorandum opinion.


DABNEY L. FRIEDRICH

February 9, 2023                                              United States District Judge